IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:22CR453 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| ALEXA M. LOGAN, | ) | UNITED STATES' RESPONSE TO |
| | ) | MOTION TO SPEAK TO CO- |
| Defendant. | ) | DEFENDANT |
| | ) | |

Now comes the United States of America, by and through its undersigned counsel, and submits its response to Defendant's Appeal of the Magistrate Judge's Detention Order and Request for Immediate Release with Conditions.  *See* ECF at Doc. # 34, PageID 103-34.  The United States asks this Court to deny Defendant's appeal and maintain his pretrial detention, as there is a serious risk that Defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, several prospective witnesses in this case, and the evidence has shown that no condition or combination of conditions will reasonably assure the safety of other persons and the community.

## I.   FACTUAL BACKGROUND

Beginning in 2020, Defendant and his co-defendant Alexa Logan ("Logan") began sending harassing emails to various victims in the Northern District of Ohio.  Several of the emails demanded payment for support of a child allegedly born to Logan.  The emails alleged that one of the email recipients fathered the child.

In January 2022, Defendant began sending emails to various recipients in the Northern District of Ohio alleging that Logan had delivered a stillborn baby, which he blamed on stress caused by harassment from the email recipients and others associated with them.  The emails referenced several

persons, including a judge of the Summit County court in Akron, Ohio; the judge's family members; and a supervisory agent with the FBI in Cleveland, among others.  The Cleveland FBI agent was a recipient of many of the emails.  Several of the emails included photos of what appeared to be a deceased infant.  Defendants repeatedly demanded money to pay for the alleged infant's funeral.

Between January 2022 and his arrest on July 13, 2022, Defendant continued to send harassing emails to various individuals on a regular basis.  Over time, the emails became more threatening and asserted facts which were disconnected from reality, including repeated assertions that the FBI had sent people to break into Defendant's home and attack his wife.  Additionally, Defendant's emails often included screen shots or attachments of alleged emails he received from others, including purported threats sent to him by the Summit County judge's family members.  Investigation has shown that those alleged screen shots and attachments were not authentic and that Defendant and/or Logan likely fabricated the messages.

Defendant's emails included threatening language such as:

- o "If [Logan] dies as devastated as she is right now your problems will only get bigger. I'm not some soft punk kid from Akron like [Summit County judge's] son who makes threats but never even mowed the lawn or mastered the basics to be a man."
    - ▪ Email sent 01/27/22 to at least two of the victims named in the indictment and others

- o "When I do what needs to be done and I will for them for trying to harm the mother of my children and illegally entering my home  when my wife is grieving a loss. I'll bring the bodies and start stacking them in front  of the Akron FBI, Judge [REDACTED]'s Court of Common Plea, The Cleveland FBI, [Akron law firm], [Victim's business], [Victim's business]. I'll leave some outside of [former FBI supervisor]'s house, [FBI] Director Wary's [sic] House. [Akron attorney] I'll put a few on your wife's car and your drive way. With your ego you'll come outside first to run your mouth I'll count on that. As for [REDACTED] I'll just wait for him in his living room."
    - ▪ Email sent 02/02/22 to at least two of the victims named in the indictment and others

- o  "My daughter is still dead so everyday you wake up and clip that stupid badge on your belt and you holster your duty weapon which you are nothing without remember that. It's been a month going on two. Every time the anniversary of her death comes around I'll visit you in prison if you're brought up on charges and remind you that you're a murderer from behind the glass but my hope is that they let me on the recreation yard with you and

send the other inmates inside so we can figure out what your problem is or they'll release you into general population from confinement so the other low lives know that a former FBI agent is in their presents but as [judge's relative] put it in an email yesterday to [Logan] the law works in the favor of rich people, who just happen to be white in this case so they'll put you on protective status more than likely. I hope that mouthy arrogant idiot  is as tough in person as he is behind a phone and computer keyboard, god bless his soul again. [Summit County judge] should have showed him both side  of life  instead of raising him to only see one. Let him keep sending people here to do his dirty work and you can keep pretending that you don't know he's doing it. Remember my last email to you clowns? every time you do something dirty for [Summit County judge] like send people to kill [Logan] even after my daughter's death, ask yourself this… How much blood do you have to spear [sic]? Remember this is Florida so I'll make sure the news gets a hold of it all. That's a courtesy. The  others who come with the same intent, well I already told you what I'd do on my last email with your director cc on it. Man vs boy [supervisory FBI agent] remember that."

- ▪ Email sent 03/17/22 to at least two of the victims named in the indictment, including the supervisory FBI agent, and others

- ○ "A day doesn't go by where I don't think about what you pieces of s--t took from us. By the time I'm done my face is the last thing you'll see when you flush your toilets and turn to stare at your reflection in the water."
  - ▪ Email sent 03/25/22 to at least two of the victims named in the indictment and others

- ○ "The game you keep playing will cost some if not all of you your lives one day…Nice try though like I said before ask yourself how much blood you have to spare…You killed my daughter so it's prison at the end of the DOJ investigation or nothing at all. I shouldn't have to tell you what the alternative is."
  - ▪ Email sent 04/18/22 to at least three of the victims named in the indictment and others

Defendant also spoke on several occasions of traveling to places where various victims and others are located in order to confront them.  For example, his communications to the victims and others have included the following:

- ○ "I can send people to your PD to talk to you if the need arises. It's not hard to do unless you plan on sleeping under your desk and not leaving work at all. I can have them meet you when you and [Summit County judge]'s boys have your little safety meetings to discuss 'business' over coffee or golf."
  - ▪ Email sent 04/06/22 to local police detective, supervisory FBI agent, and others.

3

- "Your agent colluded with a judge and an attorney and killed my daughter. If I have to get on a flight to D.C., my touchdown will be as epic as a Super Bowl performance during halftime. If I were you, I would return [Logan's] call or at least have the decency to reply to her email. You have seven days. If you do not reply in seven days, I will get on a flight to D.C. and you can ask Director Wray exactly how I feel about the Bureau, because I don't care. Thank you."
  - 04/12/22 voicemail to FBI employee in Washington, D.C.

Defendant sent more than 60 emails from his email account to various recipients associated with this investigation. In total, more than 200 related emails were sent from Defendant's email account and Logan's email account, to which Defendant had access.

In addition, during the search warrant executed at Defendants' residence on July 13, 2022, investigators located a Glock pistol which was not seized. While Logan has reported to the United States Probation Department that the firearm was given to a third party to hold during the pendency of this case, it is unknown to the government whether Defendant would have access to that firearm or other firearms if released from custody.

On July 13, 2022, Defendant was charged by complaint with Cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(5), and Interstate Communications with Intent to Extort, in violation of 18 U.S.C. § 875(d). Federal investigators arrested Defendant the same day at his home in the Southern District of Florida. Following his initial appearance on the complaint, a federal magistrate judge in that district held a hearing on the government's motion for detention. After considering the evidence presented at the hearing, the court ordered Defendant detained pending trial. ECF at Doc. # 3, Attachment #3, PageID 22-25.

On August 10, 2022, a federal grand jury for the Northern District of Ohio returned an indictment charging Defendant and Logan with four counts of Cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(5), and one count of Interstate Communications with Intent to Extort, in violation of 18 U.S.C. § 875(d). ECF at Doc. # 4, PageID 28-30. On October 12, 2022, Defendant filed the instant appeal of the magistrate judge's detention order.

## II.    LAW AND ARGUMENT

Pretrial detention of a defendant is governed by 18 U.S.C. § 3142.  Section 3142(f) sets forth the circumstances under which the Court is permitted to hold a detention hearing to determine whether a defendant should be detained pending trial, as well as the criteria that the court is to consider in making that determination.  That section provides, in part:

> **(f) DETENTION HEARING.**—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>
>> **(1)** upon motion of the attorney for the Government, in a case that involves—
>>
>>> **(A)** a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>>>
>>> **(B)** an offense for which the maximum sentence is life imprisonment or death;
>>>
>>> **(C)** an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;
>>>
>>> **(D)** any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or
>>>
>>> **(E)** any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or
>>
>> **(2)** upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—
>>
>>> **(A)** a serious risk that such person will flee; or

**(B)** a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f).

Thus, under § 3142(f), in order to consider the issue of detention, a court must first find that the case falls into one of the seven categories set forth in subsections (1) and (2).  If the court finds that it does, then it must hold a hearing to determine whether there are conditions of release that would assure the defendant's appearance and the safety of any other person and the community. 18 U.S.C. § 3142(f).  The factors which the court is to consider in making that determination are set forth in § 3142(g), which states:

**(g) FACTORS TO BE CONSIDERED.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

**(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

**(2)** the weight of the evidence against the person;

**(3)** the history and characteristics of the person, including—

**(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

**(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential

6

> forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

If sufficient conditions of release do not exist which would eliminate the defendant's risk of flight and the danger to the community, then the court must order the defendant detained pending trial.  18 U.S.C. § 3142(e)(1).

In the instant case, the magistrate judge complied with all of the requirements of § 3142 in ordering Defendant's detention.  First, the court determined that the case fell into one of the § 3142(f) categories for which it could consider detention.  Specifically, in its Order of Detention, the court found that Defendant was eligible for detention, and a hearing was warranted, on the government's motion or the court's own motion pursuant to § 3142(f)(2).  ECF at Doc. # 3, Attachment #3, PageID 22, 24.  That finding was proper based upon Defendant's unrelenting harassment of the victims and his increasingly serious and specific threats to not only continue his harassing activity, but to travel from his home in Florida to Ohio and Washington, D.C., in order to confront various victims.  Given that evidence, the magistrate judge was correct in finding that § 3142(f)(2) applied, as the case involved "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness[.]"

After holding a detention hearing and considering the § 3142(g) factors, the court determined that the government had proven "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community."  *Id*., PageID 23.  Accordingly, the court ordered Defendant detained pending trial.  In its Order of Detention, the court set forth the reasoning underlying its finding.  Some of the evidence the court found persuasive included the fact that Defendant's communications to the various victims "include[d] threats of violence and graphic images."  The court made specific reference to Defendant repeatedly asking victims "how

7

much blood [the victims had] to spare," and stating that he would "bring the bodies and start stacking them in front of [the victims]." *Id.*, PageID 24.  Further, the court noted that "Defendant's harassment reflected intimate knowledge of his victims, as he was able to target the victims' family members and business associates." *Id.*  Finally, the court observed that "Defendant has engaged in near constant harassment of victims despite a cease and desist letter from law enforcement to stop," after which "Defendant ramped up the violent rhetoric of his communications." *Id.*  Based on the evidence presented, the court determined that "Defendant's own words indicate he is unlikely to stop the harassing communications." *Id.*

Defendant's assertion that the court illegally detained him by simply finding that he was a danger to the community ignores the entirety of the court's analysis and its specific findings as to each statutory requirement for detention.  Though Defendant discusses at some length the "gatekeeping" function of § 3142(f), he fails to acknowledge the court's adherence to the statute for that purpose in the instant case, in which the court found that a detention hearing was authorized under § 3142(f)(2).  Because the court did properly comply with that first step in the process, it could then order Defendant detained if it found him to be a danger to the safety of the community.  Defendant is simply wrong in asserting otherwise.

The court did, in fact, find Defendant to be a danger to the safety of the community, pursuant to §§ 3142(f) and (g).  That finding was clearly supported by the evidence, which the court summarized in its Order of Detention.  Specifically, Defendant engaged in a long and sustained campaign of harassment against various victims, which intensified over time.  He contacted victims' family members and employers, and the language of his emails and phone messages became increasingly violent and threatening.  As the magistrate judge noted, some of Defendant's messages included asking victims "how much blood [they had] to spare," and threatening to "bring the bodies and start stacking them" at the victims' workplaces and homes.  Defendant also threatened to wait in one victim's living room and

8

sent an email telling several victims that what he perceived as their wrongful conduct "will cost some if not all of you your lives one day."  Those statements, coupled with Defendant's threats to make contact with the victims at their locations (i.e., "I can send people to your [police department]," "If I have to get on a flight to D.C., my touchdown will be as epic as a Super Bowl performance during halftime.") easily support a finding that Defendant poses a danger to the safety of any person and the community if released from custody.

## III.    CONCLUSION

Because the magistrate judge complied with all of the requirements of 18 U.S.C. § 3142 in ordering Defendant detained pending trial, and because the court's findings were well-supported by the facts and evidence presented at the detention hearing, this Court should deny Defendant's appeal of the Order of Detention.

Respectfully submitted,

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By:    /s/ Peter E. Daly

Peter E. Daly (OH: 0084745)
Assistant United States Attorney
Federal Building
2 South Main Street, Room 208
Akron, OH 44308
(330) 761-0529
(330) 375-5492 (facsimile)
Peter.Daly@usdoj.gov